# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN P. SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALLSTATE INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 3:11-CV-165 <br> JUDGE KIM R. GIBSON |

## MEMORANDUM AND ORDER OF COURT

**GIBSON, J.**

### I.  SYNOPSIS

This matter comes before the Court on Defendant Allstate Insurance Company's Motion for Summary Judgment (Doc. No. 18), which Plaintiff Susan P. Smith opposes. For the reasons that follow, Defendant's Motion for Summary Judgment is **DENIED.**

### II.  JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper under 28 U.S.C. § 1441(a).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

This action stems from the personal injuries Susan P. Smith sustained in a motor vehicle accident on June 13, 2004 and Allstate Insurance Company's (hereinafter "Allstate") subsequent handling of Plaintiff's insurance claim for injuries allegedly related to the accident. (Doc. No. 20 at ¶¶ 1, 2, 11; Doc. No. 27 at ¶¶ 1, 2, 11; Doc. No. 1-2.) Plaintiff Susan P. Smith, (hereinafter "Plaintiff") commenced the instant action by filing a two-count Complaint in the Court of Common Pleas of Blair County, Pennsylvania against Allstate under theories of contractual bad

faith (Count I) and statutory bad faith pursuant to 42 Pa. C.S.A. § 8371 (Count II). (Doc. No. 1 at ¶ 1; Doc. No. 1-2.) Plaintiff seeks compensatory and punitive damages, fees, costs, and interest. (Doc. No. 1-12 at 7, 8.) Allstate timely removed the case to this Court on July 20, 2011. (Doc. No. 1.)

In sum, the relevant facts are as follows. On June 13, 2004, Plaintiff was travelling as a passenger in a motor vehicle owned by her mother and insured through Nationwide Insurance Company when she was involved in a motor vehicle accident. (Doc. No. 20 at ¶ 2; Doc. No. 27 at ¶ 2.) Plaintiff was transported to the Emergency Department of the Potomac Hospital in Virginia, where she was treated for injuries. (Doc. No. 20 at ¶ 3; Doc. No. 27 at ¶ 3.) On the day of the accident, Plaintiff was diagnosed with a fractured clavicle and released from the Emergency Department. (Doc. No. 20 at ¶ 4; Doc. No. 27 at ¶ 4.) Over the following years, Plaintiff visited doctors regarding pain in her knees and other injuries, and later underwent two arthroscopic surgeries on her left knee. (See Doc. No. 20 at ¶¶ 14, 16, 17, 18, 27, 36, 42, 47, 48, 50, 56; Doc. No. 27 at ¶¶ 14, 16, 17, 18, 27, 36, 42, 47, 48, 50, 56.) Although Plaintiff attributes her knee injuries to the accident (see Doc. No. 27 at ¶¶ 104, 105, 150), Allstate disputes that Plaintiff's knee injuries were causally related to the motor vehicle accident (see Doc. No. 29 at ¶¶ 105, 150).

At the time of the accident, Plaintiff was a named insured under an Allstate Property and Casualty Insurance Company Auto Policy. (See Doc. No. 1-2 at ¶ 4; Doc. No. 3 at ¶ 4.) On September 22, 2004, Plaintiff called and advised Allstate that she wanted to make a claim for underinsured motorist (hereinafter "UIM") benefits pursuant to this policy for injuries arising

2

from the accident. (Doc. No. 20 at ¶ 11; Doc. No. 27 at ¶ 11; see Doc. No. 20-1 at 41.) Allstate's handling of this claim gives rise to the instant case.[1] (See Doc. No. 1-2.)

In her Complaint, Plaintiff alleges that Allstate was on notice that Plaintiff had a potential UIM claim as early as June 15, 2004 but that Plaintiff was required to retain counsel to represent her on this claim on June 2, 2005 because of Allstate's lack of action. (Doc. No. 1-2 at ¶¶ 8, 9.) Plaintiff further alleges that Allstate's adjuster did not conduct any meaningful investigation of her claim before she retained counsel (*id.* at ¶ 10), Allstate selected a medical examiner who was biased in favor of insurance companies to conduct Plaintiff's independent medical examination and selected such examiner to advocate against Plaintiff's interests (*id.* at ¶¶ 16-18), Allstate demanded an examination under oath when its policy did not provide for one (*id.* at ¶ 24), Allstate failed to conduct a prompt and reasonable investigation of Plaintiff's UIM claim (*id.*), and Allstate engaged in a myriad of dilatory tactics, including failing to promptly obtain records and schedule medical examination necessary to evaluate Plaintiff's UIM claim, unreasonably delaying the arbitration hearing, and failing to promptly make a settlement offer (*id.*). In Plaintiff's Concise Statement of Material Facts (hereinafter the "CSMF"), Plaintiff also alleges that Allstate agents were trained to and did apply an incorrect standard to determine whether an insured breached the limited tort threshold. (See Doc. No. 27 at ¶¶ 113-21, 125, 132-35, 140.) On December 9, 2009 Plaintiff's UIM was arbitrated and Plaintiff was awarded $160,000 molded to reflect a final award of $135,000. (See Doc. No. 20 at ¶ 101; Doc. No. 20-1 at 227;

---

[1] Neither party disputes that Pennsylvania law applies to this action. A district court sitting in diversity applies the choice-of-law rules of the state in which the district court sits. See *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 n.3 (3d Cir.1991) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Pennsylvania's choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was contracted and delivered. *McMillan v. State Mut. Life Assurance Co. of Am.*, 922 F.2d 1073, 1074-75 (3d Cir. 1990); *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877, 880 (Pa. Super. Ct. 1966). It appears that the contract at issue was contracted and delivered in the Commonwealth of Pennsylvania, of which Plaintiff is a resident. (See Doc. No. 1 at ¶ 9; Doc. No. 1-2 at ¶ 1.)

3

Doc. No. 27 at ¶ 101.) Allstate issued a check to Plaintiff and her counsel for $135,000 on December 23, 2009. (See Doc. No. 20 at ¶ 102; Doc. No. 27 at ¶ 102.)

On May 23, 2012, Allstate filed the instant motion for Summary Judgment. (Doc. No. 18.) Allstate contemporaneously filed its memorandum in support of its motion (hereinafter "Allstate's Memorandum in Support") (Doc. No. 19) and CSMF (Doc. No. 20) with an appendix of supporting exhibits (Doc. No. 20-1) as required by the Local Rules of the United States District Court for the Western District of Pennsylvania (hereinafter the "Local Rules"). On June 26, 2012, Plaintiff filed a memorandum in opposition to the motion (hereinafter "Plaintiff's Memorandum in Opposition") (Doc. No. 28) and a responsive CSMF (Doc. No 27) with an appendix of supporting exhibits (Doc. No. 27-1). Allstate subsequently filed a reply to Plaintiff's responsive CSMF (Doc. No. 29) and, with leave of Court, a supplemental brief in support of Allstate's Motion for Summary Judgment (hereinafter "Allstate's Supplemental Brief") (Doc. No. 37). Plaintiff thereafter filed a response to Allstate's Supplemental Brief (Doc. No. 43) with leave of Court. Allstate's motion has been fully briefed and is now ripe for disposition.

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).[2] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[2] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

4

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)).

## V. DISCUSSION

Allstate contends that the Court should grant summary judgment[3] for Allstate as to both counts of Plaintiff's Complaint. Specifically, Allstate contends that the Court should grant summary judgment as to (1) Count I of Plaintiff's Complaint (contractual bad faith) because Plaintiff's UIM claim has been resolved pursuant to the terms of Plaintiff's insurance contract following payment by Allstate to Plaintiff pursuant to the arbitration award (Doc. No. 18 at ¶ 3; Doc. No. 19 at 19) and (2) Count II of Plaintiff's Complaint (statutory bad faith pursuant to 42 Pa. C. S. § 8371) because Plaintiff has failed to offer clear and convincing evidence that Allstate

---

[3] In Allstate's Motion for Summary Judgment (Doc. No. 18) and Allstate's Memorandum in Support (Doc. No. 19), Allstate states that the Court should dismiss Plaintiff's claims. Allstate's motion, however, is styled as a motion for summary judgment and supplemented with factual support. (See Doc. No. 20-1.) Therefore, the Court addresses Allstate's motion as a motion for summary judgment and references Allstate's requested relief as a request to grant summary judgment, rather that a request to dismiss Plaintiff's claims.

5

lacked a reasonable basis for its handling of her claim for UIM benefits (Doc. No. 18 at ¶ 4; Doc. No. 19 at 5). Plaintiff disagrees. Plaintiff contends that (1) summary judgment is inappropriate as to Count I because an insured may have a cause of action for breach of contract against an insured notwithstanding payment to the insured pursuant to the insurance policy when bad faith exists (see Doc. No. 28 at 16) and (2) summary judgment is inappropriate as to Count II because Allstate failed to advise Plaintiff of benefits, misrepresented applicable benefits, applied an arbitrary standard to its investigation and evaluation of the claim, employed a biased medical examiner to examine Plaintiff, conspired to misrepresent the states of the claim to the insured's attorney, and failed to conduct a meaningful investigation of the claim for a period of nine months and therefore should be liable for bad faith insurance practices pursuant to 42 Pa. C. S. § 8371 (see id. at 4-15).[4] The Court will address these issues in turn, beginning with Allstate's Motion for Summary Judgment as to Count I.[5]

---

[4] In her Memorandum in Opposition, Plaintiff states that "[v]ioations of the Unfair Insurance Practices Act and the Unfair Claims Settlement Practices Act are admissible and relevant to support claims of bad faith." (See Doc. No. 28 at 5.) As recently discussed by the Eastern District, "[t]here is some conflict between the Pennsylvania state court and federal court regarding whether UIPA violations can support a bad faith claim under Section 8371." *Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-7004, 2012 U.S. Dist. LEXIS 17110, at *12-15 (E.D. Pa. Feb. 10, 2012). While the Pennsylvania Superior Court has determined that it is appropriate to consider the UIPA when evaluating an insurer's bad faith, "the Third Circuit and District Courts in the Third Circuit have taken the opposite approach of the Pennsylvania courts." *Id.* (collecting cases); see also *Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co.*, 29 Fed. Appx. 823, 827 (3d Cir. 2002) (finding that "a violation of the UIPA or the UCSP is not a per se violation of the bad faith standard and . . . it is only the Terletsky [sic] standard itself that allows one to determine whether a violation of the former is of any relevance in a case [involving a bad faith claim pursuant to 42 Pa. C. S. § 8371]"). Although Plaintiff uses the UIPA and UCSP to support her argument that Allstate acted in bad faith and is therefore liable pursuant to 42 Pa. C. S. § 8371, Plaintiff does not rest her bad faith argument on alleged violations of the UIPA or UCSP nor is Plaintiff's factual or evidentiary support for her bad faith claim relevant solely to violations of the UIPA or UCSP. (See Doc. No. 1-2; Doc. No. 28.) Thus, the Court will consider Plaintiff's factual allegations and evidentiary support albeit not in context of the UIPA or UCSP. Rather, the Court will consider Plaintiff's factual allegations and evidentiary support as they are relevant to the standard established in *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994), which has been applied and approved of by the Third Circuit. See *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505 (3d Cir. Pa. 2004).

[5] The Court acknowledges that although Allstate addressed the counts of Plaintiff's Complaint in sequential order in its Motion for Summary Judgment (Doc. No. 18), Allstate's Memorandum in Support addresses Plaintiff's statutory bad faith claim (Count II) first and Plaintiff's contractual bad faith claim (Count I) second, a format which Plaintiff followed in her Memorandum in Opposition. (See Doc. No 19; Doc. No. 28.) The Court will address Allstate's motion and arguments for summary judgment relevant to the counts of Plaintiff's Complaint in the order in which those counts appear in the Complaint.

### A. Count I – Contractual Bad Faith

Allstate's Motion for Summary Judgment on Count I of Plaintiff's Complaint is premised on the contention that, under Pennsylvania law, when an insurer pays an insured to satisfy an insured's claim under an insurance policy pursuant to an arbitration award, the insured may not assert a breach of contract claim arising from an insurer's alleged bad faith in handling the claim. (See Doc. No. 18 at ¶ 3; Doc. No 19 at 15-19.) This argument misstates the law.

A party asserting a breach of contract claim under Pennsylvania law must demonstrate (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. Pa. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). "In Pennsylvania, a duty of good faith and fair dealing is implicit in an insurance contract." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011) (citing *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1144 (Pa. Super. Ct. 2006)); see also *Dercoli v. Pa. Nat. Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989) (quoting *Fedas v. Ins. Co. of the State of Pa.*, 151 A. 285 (Pa. 1930)); *Zaloga v. Provident Life and Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 629-30 (M.D. Pa. 2009).

Generally, when an insurance company has paid the proceeds of an insurance policy, there can be no breach of contract claim because the insured has received what she was due under the policy and therefore has no damages. See *Fitzpatrick v. State Farm Ins. Cos.*, No. 09-1498, 2010 U.S. Dist. LEXIS 51348, at *6 (W.D. Pa. May 24, 2010); *Wolf v. Booker*, No. 08-12667-BC, 2009 U.S. Dist. LEXIS 2940, at *7-8 (E.D. Mich. Jan. 14, 2009). When a party sues for damages stemming from an insurer's bad faith in handling a claim, however, the damages sought may be different from the damages compensated by payment pursuant to the insurance policy and therefore may not be remedied by such payment. See *Birth Ctr. v. St. Paul Cos.*, 787

A.2d 376, 385 (Pa. 2001); *Clunie-Haskins v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 380, 388 (E.D. Pa. 2012); *Fitzpatrick*, 2010 U.S. Dist. LEXIS 51348, at *7-10; *Amitia v. Nationwide Mut. Ins. Co.*, No. 3:08cv335, 2009 U.S. Dist. LEXIS 2840, at *7-9 (M.D. Pa. Jan. 15, 2009). Acknowledging this, the Supreme Court of Pennsylvania has held that "where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith" and is liable for "the known and/or foreseeable compensatory damages of its insured that reasonably flow from the insurer's bad faith conduct." *Birth Ctr.*, 787 A.2d at 389.

Although the case announcing this holding involved a third party insurance claim, the language of that decision does not distinguish between first and third party insurance, see generally *id.*; see also *Kakule v. Progressive Cas. Ins. Co.*, No. 06-4995, 2007 U.S. Dist. LEXIS 44942 (E.D. Pa. June 20, 2007), and its holding has since been applied to first party insurance claims and specifically to claims for UIM benefits that do not involve claims by third parties, see *Fitzpatrick*, 2010 U.S. Dist. LEXIS 51348, at *1, *6-10, *13 (permitting bad faith breach of contract claim following tender of policy proceeds to insured where claim was premised on insurer's handling of insured's claim for UIM benefits and did not involve claims by a third party); *Zaloga*, 671 F. Supp. 2d 623, 632 (holding that a duty of good faith and fair dealing is implied in insurance contracts in Pennsylvania and allows for the award of compensatory damages pursuant to a breach of contract claim in a first party insurance case; explaining that "[t]he difference between first and third party claims does not matter to the implied covenant of good faith and fair dealing"); *Amitia*, 2009 U.S. Dist. LEXIS 2840, at *7-8 (permitting contractual bad faith claim for insurer's handling of Plaintiff's UIM claim despite payment of benefits under insurance contract); *Kakule*, 2007 U.S. Dist. LEXIS 44942, at *16 (applying *Birth Center* to first party insurance claim; explaining that *Birth Center* "was meant to apply to bad

8

faith claims in general"). In light of the language of *Birth Center* and its subsequent application by Courts applying Pennsylvania law, this Court predicts that the Supreme Court of Pennsylvania would apply *Birth Center* to a first party insurance case if presented with the issue and applies this precedent to the instant case.

Allstate appears to argue that Plaintiff's now resolved underinsured motorist claim encompasses Plaintiff's contractual bad faith claim. (See Doc. No. 19 at 15, 17, 19.) It is true that "Pennsylvania law does not recognize a separate breach of contractual duty of good faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim." *Simmons*, 788 F. Supp. 2d at 409. Hence, Allstate correctly notes that claims for breach of the contractual duty of good faith and fair dealing have been dismissed where Plaintiff also asserts a claim for breach of contract and Plaintiff's claim for breach of the duty of good faith and fair dealing is redundant. (See Doc. No. 19 at 17 (citing *Mora v. Nationwide Mut. Fire Ins. Co.*, 65 Pa. D. & C.4th 59 (Cnty. Ct. 2003)); see also, *Simmons*, 788 F. Supp. 2d at 409 (explaining that where plaintiff alleges defendant breached "duty of good faith and fair dealing by denying first party benefits under an insurance policy, said claim is subsumed by the plaintiff's breach of insurance contract claim *premised on the same conduct*" (emphasis added)).

Here, however, Plaintiff does not assert a separate claim for breach of contract. (See Doc. No. 1-2.) Furthermore, Plaintiff seeks to recover for emotional distress damages and costs. (See Doc. No. 1-2 at ¶ 27.) Thus, unlike the cases cited by Allstate in which plaintiffs did not plead damages beyond those sustained by the insurer's failure to pay the proceeds of the policy, see *Galko v. Harleysville Pennland Ins. Co.*, 71 Pa. D. & C.4th 236, 254 (Cnty. Ct. 2005), or already settled a claim for breach of contract, see *Mora*, 65 Pa. D. & C.4th 59, here Plaintiff has alleged damages resulting from Allstate's alleged delay in tendering payment under the policy

9

and has not asserted or previously settled a claim for breach of contract. The damages for which Plaintiff seeks to recover in the instant case, specifically stress and anxiety, costs, embarrassment and humiliation, and mental anguish (see Doc. No. 1-2 at ¶ 27), are distinct from those compensated by Allstate's payment to Plaintiff under Plaintiff's insurance policy. Although emotional distress damages are generally not recoverable in actions for breach of contract in Pennsylvania, *Amitia*, 2009 U.S. Dist. LEXIS 2840, at *8; *Kakule*, 2007 U.S. Dist. LEXIS 44942, at *19-20; *Tannenbaum v. Unum Life Ins. Co. of Am.*, No. 03-CV-1410, 2005 U.S. Dist. LEXIS 4305, at *7 (E.D. Pa. Mar. 18, 2005), recovery for emotional distress damages may be possible where "the breach is of such a kind that serious emotional disturbance was a particular likely result," *Birth Ctr.*, 787 A.2d at 401 (quoting *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (Pa. 1981); see also *Kakule*, 2007 U.S. Dist. LEXIS 44942, at *20-23; *Tannenbaum*, 2005 U.S. Dist. LEXIS 4305, at *7-10. Accordingly, the Court finds that Plaintiff's claim is not precluded by recovery under the insurance contract pursuant to Allstate's payment of the arbitration award.

When resolving a motion for summary judgment, a court must determine whether there is a genuine dispute as to any material fact. See Fed. R. Civ. Pro. 56(a). Local Rule 56.B.2 requires that a party moving for summary judgment file a memorandum in support of its motion that "address[es the] applicable law and explain[s] why there are no genuine issues of material fact to be tried and why the moving party is entitled to judgment as a matter of law." Allstate argues that Count I of Plaintiff's Complaint should be dismissed because Plaintiff already resolved her underinsured motorist claim pursuant to the terms of her insurance contract and is therefore precluded from asserting a breach of contract claim as a matter of law. (See Doc. No. 19 at 19.) As explained in the foregoing discussion, under Pennsylvania law, the resolution of

Plaintiff's uninsured motorist claim pursuant to the terms of Plaintiff's insurance contract does not prevent Plaintiff from bringing a breach of contract action against Allstate that is premised on Allstate's alleged bad faith in handling the claim. Beyond this legal argument, Allstate, in its Memorandum in Support, offers no further explanation as to why there are no genuine issues of material fact to be tried and why it is entitled to judgment as a matter of law, as is required by Local Rule 56.B.2. Therefore Allstate's Motion for Summary Judgment on Count I of the Complaint is denied.

### B. Count II – Statutory Bad Faith Pursuant to 42 Pa. C. S. § 8371

Allstate asserts that the Court should grant Allstate summary judgment on Count II of Plaintiff's Complaint because the evidentiary record does not support Plaintiff's claim of bad faith to the requisite burden of proof. (Doc. No. 18 at ¶ 4; Doc. No. 19 at 5). Plaintiff brings her statutory bad faith claim pursuant to 42 Pa. C. S. § 8371, which states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

To make out a bad faith claim under this statute, "a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). Bad faith has

11

been defined as "any frivolous or unfounded refusal to pay proceeds of a policy. . . . For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or will . . . ." *Nw. Mut. Life Ins. Co.* v. *Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (quoting *Terletsky*, 649 A.2d at 688). An insurer's conduct need not be fraudulent to constitute bad faith, but mere negligence or bad judgment is not bad faith. *Id.* (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). To defeat a claim of bad faith an insurer need not show that the insurer was correct; rather, an insurer must demonstrate that it had a reasonable basis for its decision to deny benefits. See *Leach v. Nw. Mut. Ins. Co.*, No. 01-2364, 2005 US Dist LEXIS 39966, at *30 (W.D. Pa. Dec. 22, 2005). See also *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) ("A reasonable basis is all that is required to defeat a claim of bad faith.").

Section 8371 encompasses a broad range of insurer conduct. *Cohen v. State Auto Prop. & Cas. Co.*, No. 00-3168, 2001 U.S. Dist. LEXIS 1178, at *6 (E.D. Pa. Feb. 8, 2001). For example, bad faith includes an unreasonable delay in handling claims, see *Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005); *Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-7004, 2012 U.S. Dist. LEXIS 17110, at *11 (E.D. Pa. Feb. 10, 2012), "a frivolous or unfounded refusal to pay, . . . [and] a failure to communicate with the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). "Bad faith also occurs when an insurance company makes an "inadequate investigation or fails to perform adequate legal research concerning a coverage issue." C*orch Constr. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Cnty. Ct. 2003) (citing *Hollock v. Erie Ins. Exch.*, 54 Pa. D. & C.4th 449 (Cnty. Ct. 2002)).

Furthermore, "[a]n unreasonable interpretation of the policy provisions as well as a blatant misrepresentation of the facts or policy provisions will support a bad faith claim." *Id.* at 516-17; see also *Bracciale v. Nationwide Mut. Fire Ins. Co.*, No. 92-7190, 1993 U.S. Dist. LEXIS 11606, at *27 (E.D. Pa. Aug. 20, 1993). Failure to provide an examining physician with the proper definition of a term that is applicable to a Plaintiff's claim pursuant to an insurance policy and the physician's requested report is relevant to bad faith. See *Greco v. Paul Revere*, No. 97-6317, 1999 U.S. Dist. Lexis 110, at *4, *15-17 (E.D. Pa. Jan. 12, 1999) (denying summary judgment for insurer where evidence provided by plaintiff included evidence that insurer provided incorrect definition of disability to IME examiner upon whose report insurer based its decision to terminate disability payments).

For a plaintiff to succeed on a bad faith claim pursuant to 42 Pa. C. S. § 8371, bad faith "must be proven by clear and convincing evidence and not merely insinuated." *Terletsky*, 649 A.2d at 688; see also *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994); *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 229 (Pa. 1957). "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Babayan*, 430 F.3d at 137 (quoting *Koiserowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999). Nonetheless, if a reasonable jury could find that Allstate did not have a reasonable basis for denying benefits under the policy and knew of or recklessly disregarded this, summary judgment is not appropriate. See *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 356 (E.D. Pa. 1997).

Plaintiff cites numerous alleged actions and inactions of Allstate to support her allegation that Allstate acted in bad faith. (See Doc. No. 1-2; Doc. No. 27; Doc. No. 28.) See also *supra*

Part III. Among these is Allstate's alleged use of the wrong standard in evaluating Plaintiff's claim. (See Doc. No. 28 at 6-8.) With respect to the standard used to evaluate Plaintiff's claim, Plaintiff specifically alleges that two Allstate adjusters "investigated and evaluated Susan Smith's claim requiring her to prove that she suffered a 'permanent impairment' and a 'serious permanent impairment'" even though the motorist insurance policy stated that the insured may maintain an action for non-economic losses if a serious injury is suffered[6] (*id.* at 6; Doc. No. 27 at ¶ 120; Doc. No. 20-1 at 117) and that Allstate trained and instructed its adjusters to apply this incorrect standard (Doc. No. 28 at 6-8). (See also Doc. No. 27 at ¶¶ 113-16, 118-20, 125, 132, 140.)

In support of these allegations, Plaintiff has supplied the Court with the following: (1) an excerpt of the deposition of Allstate adjuster Kenneth Trost in which he stated that (a) at the time he was handling injury claims, it was his understanding that a person must prove death, permanent loss of a bodily function, or serious permanent disfigurement—in other words, a permanent impairment—to breach the limited tort threshold (see Doc. No. 27-1 at 36), (b) he believed this understanding likely came from his training (see *id.* at 36-37), (c) in his letter to Dr. Ellis, Plaintiff's treating orthopedist, Kenneth Trost was asking Dr. Ellis for Dr. Ellis' medical opinion as to whether Plaintiff sustained a permanent injury (see *id.* at 38; see also Doc. No. 27 at ¶ 115; Doc. No. 29 at ¶ 115; Doc. No. 20-1 at 89 (letter from Ken Trost to Dr. Ellis inquiring whether Plaintiff suffered any type of permanent impairment from the injuries sustained in the accident)), and (d) when explaining the tort threshold to Plaintiff, Kenneth Trost explained that she would have to show death, serious disfigurement, permanent loss, and permanent impairment (see Doc. No. 27-1 at 41-42); (2) an excerpt of the deposition of Allstate adjuster Timothy

---

[6] The insurance policy defines serious injury as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." (Doc. No. 20-1 at 105.)

14

McCarten in which he stated that (a) he believed a claimant would need to prove a serious permanent injury to a bodily function to breach the limited tort liability threshold (see *id.* at 50) and (b) he used a serious permanent injury standard (see *id.*); (3) an IME referral request requesting that examining physician "indicate whether or not injuries breach the limited tort threshold – Is this serious – permanent impairment" (see Doc. No. 20-1 at 177); (4) claim notes of adjuster Timothy McCarten indicating that Dr. Perry "held to [*sic*] opinion of no serious permanent impairment" (see Doc. 27-1 at 57); (5) an excerpt of Allstate's Claims Manual that indicates that some examples of serious injuries include multiple fractures and disc injuries (see *id.* at 69); and (6) claim notes of Lawrence E. Clark indicating that Allstate was aware Plaintiff suffered "fractures" in the motor vehicle accident as of June 21, 2004 (see *id.* at 59).

Allstate admits that Plaintiff's insurance policy stated that the insured may maintain an action for non-economic losses if a serious injury is suffered (see Doc. No. 27 at ¶ 120; Doc. No. 29 at ¶ 120) but denies Plaintiff's claims that its adjusters applied and were trained to apply a permanent impairment/injury standard to determine whether Plaintiff breached the limited tort threshold (see Doc. No. 27 ¶¶ 114, 116, 118-19; Doc. No. 29 at ¶¶ 114, 116, 118-19). As such, the Court finds that a genuine dispute as to a material fact exists with respect to whether Allstate's adjuster applied an appropriate standard to Plaintiff's claim and whether Allstate trained its employees to apply an incorrect standard to such claims. Specifically, the Court finds that Plaintiff has provided sufficient evidence from which a reasonable jury could find that Allstate unreasonably denied benefits under the policy as a result of applying an incorrect standard to Plaintiff's claim and/or providing the IME physician with the improper standard relative to Plaintiff's claim and that Allstate knew of or recklessly disregarded this lack of a reasonable basis for denying Plaintiff's claim.

15

While Allstate was not obligated to pay Plaintiff's claim on demand without inquiring into Plaintiff's entitlement to UIM coverage, Allstate could not withhold payments of the UIM claim absent a reasonable basis for doing so. See *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1145 (Pa. Super. Ct. 2006) (citing *Terletsky*, 649 A.2d at 688). The Court is satisfied that, when viewed in the light most favorable to the Plaintiff, the non-moving party, Plaintiff has set forth sufficient evidence to show that a reasonable jury could find that Allstate did not have a reasonable basis for denying benefits under the policy and knew of or recklessly disregarded this lack of a reasonable basis, and therefore that there is a genuine dispute of material fact for trial. Accordingly, Allstate's Motion for Summary Judgment on Count II of the Complaint is denied.

## VI.   CONCLUSION

For the reasons stated above, Allstate has failed to meet its burden to show that there is no genuine dispute as to any material fact with respect to Count I of Plaintiff's Complaint. Further, Plaintiff has demonstrated that a genuine dispute of material fact exists with respect to Count II of Plaintiff's Complaint. Accordingly, the Court **DENIES** Allstate's Motion for Summary Judgment. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN P. SMITH,<br><br>      Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>      Defendant. | CIVIL ACTION NO. 3:11-CV-165<br>JUDGE KIM R. GIBSON |

## ORDER

AND NOW, this 24th day of October, 2012, upon consideration of the Motion for Summary Judgment (Doc. No. 18) filed by Defendant Allstate Insurance Company, and in accordance with the forgoing Memorandum, **IT IS HEREBY ORDERED** that the motion is **DENIED**.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE