**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUSAN P. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:11-CV-165 |
| | ) JUDGE KIM R. GIBSON |
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER OF COURT

**GIBSON, J.**

### I.  SYNOPSIS

This matter comes before the Court on four motions *in limine* (Doc. Nos. 45, 46, 47, 48) filed by Defendant Allstate Insurance Company ("Allstate") and Plaintiff Susan P. Smith's ("Plaintiff") opposition thereto (Doc. Nos. 51, 52, 53, 54). For the reasons that follow, the Court will **GRANT** Doc. Nos. 47 and 48 and **GRANT in part** and **DENY in part** Doc. Nos. 45 and 46.

### II.  JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper pursuant to 28 U.S.C. § 1441(a).

## III. FACTUAL AND PROCEDURAL BACKGROUND[1]

This action stems from the personal injuries Plaintiff sustained in a motor vehicle accident on June 13, 2004 and Allstate's subsequent handling of Plaintiff's insurance claim for injuries allegedly related to the accident. (Doc. No. 20 at ¶¶ 1, 2, 11; Doc. No. 27 at ¶¶ 1, 2, 11; Doc. No. 1-2.) Trial is scheduled to commence on November 13, 2012. Allstate filed the instant motions *in limine* seeking to exclude various evidence. (See Doc. Nos. 45, 46, 47, 48.) Plaintiff subsequently filed responses opposing each motion. (See Doc. Nos. 51, 52, 53, 54.) The motions are now ripe for disposition.

## IV. STANDARD OF REVIEW

As this Court has explained, a motion *in limine* is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party. *Emcore Corp. v. Optium Corp.*, No. 7-326, 2009 U.S. Dist. LEXIS 96305, *2 (W.D. Pa. Oct. 16, 2009) (quoting *Black's Law Dictionary* 1013 (6th ed. 1990)). The purpose of such motion is to avoid injecting into trial matters which are irrelevant, inadmissible, and prejudicial. *Id.* at *2-3. Otherwise stated, motions *in limine* narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions. *Id.* at *3 (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).

Many of the instant motions *in limine* seek to exclude evidence on the basis of relevance or prejudice. Rule 402 of the Federal Rules of Evidence provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402. Under Rule 401, "[e]vidence is relevant if: (a) it has any

---

[1] The Court detailed the factual and procedural background of this case in its Memorandum and Order dated October 24, 2012 (Doc. No. 50). Because familiarity with that Memorandum and Order is presumed, this section is limited to the facts relevant to the disposition of the instant motions.

2

tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Pursuant to the balancing test of Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## V.    DISCUSSION

The Court will address each of the Defendant's motions *in limine*, beginning with Document Number 48.

### A.    Allstate's Motion *in Limine* to Preclude Introduction of Privileged Information Inadvertently Disclosed

Allstate moves to preclude Plaintiff from introducing certain privileged information, as identified in Document Number 48, ("the subject documents") which was inadvertently disclosed.  Allstate contends that (1) Plaintiff's counsel agreed not to use the inadvertently disclosed documents following a discussion with Defendant's counsel and (2) Plaintiff should be precluded from introducing or relying on the subject documents and the information contained therein at trial because these documents and the information contained therein remains privileged. (See Doc. No. 48 at ¶¶ 6-7, 16, 21.)  Plaintiff does not dispute the privileged nature of the subject documents or that the documents were inadvertently disclosed. (See Doc. No. 48 at ¶ 2-6, 16; Doc. No. 51 at ¶ 2-6, 16.)  Plaintiff, however, (1) denies Allstate's characterization of the agreement between Counsel and (2) counters that Allstate waived the privilege relating to the subject documents. (See Doc. No. 51 at ¶¶ 6-7, 15-16, 21.)  Specifically, Plaintiff alleges that Allstate waived the privilege by failing to send Plaintiff's counsel "a redacted CD-R" and by failing to timely object to Mr. Reif's report, which was prepared using an unredacted CD-R

3

containing the subject documents and which was allegedly served on Allstate more than four months before Allstate contested Plaintiff's use of the subject documents. (Doc. No. 51 at. ¶¶ 7, 9, 15.)

When a party asserts documents have been inadvertently disclosed, a two-step analysis must be followed. See, e.g., *Rhoades v. YWCA*, No. 09-261, 2009 U.S. Dist. LEXIS 95486, at *5-6 (W.D. Pa. Oct. 14, 2009). First, the court must determine whether the documents at issue are privileged. See, e.g., *id.* Second, the court must determine whether the three elements of Fed. R. Evid. 502(b) are met, absent which a waiver of the privilege occurs. See, e.g., *id.* Pursuant to Federal Rule of Evidence 502(b), inadvertent disclosure does not operate as a waiver of the attorney-client privilege or work-product protection in a federal proceeding if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent the disclosure; and (3) the holder promptly took reasonably steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Federal Rule of Civil Procedure 26(b)(5)(B) provides as follows:

Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

The disclosing party has the burden to prove that the elements of Federal Rule of Evidence 502(b) have been met. *Rhoades*, 2009 U.S. Dist. LEXIS 95486, at *5-6. District Courts in the Third Circuit also consider the following factors relevant to the inadvertent disclosure of privileged material:

4

(1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.

(2) The number of inadvertent disclosures.

(3) The extent of the disclosure.

(4) Any delay and measures taken to rectify the disclosure.

(5) Whether the overriding interests of justice would or would not be served by relieving the party of its errors.

See, e.g., *id.*; *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 219 (E.D. Pa. 2008) (citing *Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 520 (E.D. Pa. 1996)).

In the instant case, there is no dispute as to the privileged nature of the subject documents or that the production of the privileged documents was inadvertent. (See Doc. No. 48 at ¶ 2-6, 16; Doc. No. 51 at ¶ 2-6, 16.) Accordingly, the Court begins its analysis with the second and third elements of Federal Rule of Evidence 502(b) and the five factors that inform this analysis. Curiously, neither Allstate in its motion nor Plaintiff in her response reference Federal Rule of Evidence 502(b) or discuss its factors as they relate to the instant case. Accordingly, some information that would be helpful in resolving this issue is not before the Court. Nonetheless, the Court finds that Allstate narrowly satisfied its burden to prove that the elements of Federal Rule of Evidence 502(b) were met and a waiver did not occur.

Here, the number of inadvertent disclosures is small. In its motion *in limine*, Allstate lists only seven documents which it contends remain privileged and which Plaintiff should be precluded from introducing or relying on at trial. (See Doc. No. 48 at ¶¶ 2, 21.) This limited number of inadvertent disclosures gains significance upon consideration of Plaintiff's allegation that Allstate served more than 1,200 pages of documents on Plaintiff in response to Plaintiff's Request for Production of Documents. (See Doc. No. 51 at ¶ 1.)

Upon discovery of the inadvertent disclosures, Allstate immediately brought the issue to the attention of Plaintiff's counsel by notifying Plaintiff's counsel of the inadvertent disclosure prior to the commencement of the depositions that were set to begin on the that date, as permitted by Federal Rule of Civil Procedure 25(b)(5)(B). (See Doc. No. 48 at ¶¶ 5-6; Doc. No. 51 at ¶¶ 5-6.) Allstate engaged in a conversation with Plaintiff's counsel, the conclusion of which Allstate appears to have understood to result an oral agreement that Plaintiff's counsel would not use the subject documents. (See Doc. No. 48 at ¶ 7.) Although Plaintiff's counsel disputes Allstate's characterization of the agreement reached by the parties' counsel (compare Doc. No. 48 at ¶ 7 with Doc. No. 51 at ¶¶ 7, 9, 16, and Doc. No. 48-4 with Doc. No. 48-5), considering the Court is unable to ascertain what actually transpired during this conversation, the Court finds that it is not unreasonable for Allstate to rely on its understanding that the matter had been resolved, particularly upon consideration of the small number of inadvertent disclosures at issue and Federal Rule of Civil Procedure 25(b)(5)(B)'s mandate that a party who is notified that it received information subject to a claim of privilege or protection "must promptly return, *sequester*, or destroy the specified information . . . ." Fed. R. Civ. Pro. 25(b)(5)(B) (emphasis added). Additionally, when Plaintiff used the information contained in the subject documents in her Responsive Concise Statement of Material Facts (Doc. No. 27), Allstate promptly objected to this use in its Reply to Plaintiff's Responsive Concise Statement of Material Facts (Doc. No. 29). Thus, the Court finds that the measures taken by Allstate to rectify the disclosure were timely and reasonable. Finally, the Court finds that given the important nature of the attorney-client privilege and the manner in which the subject documents were disclosed, the overriding interests of justice favor Allstate.

In conclusion, the Court finds that Allstate's disclosure of the subject documents does not operate as a waiver of the attorney-client privilege. Accordingly, the Court will **GRANT** Allstate's motion *in limine* (Doc. No. 48).

## B. Allstate's Motion *in Limine* to Preclude Proposed Testimony by Michael E. Reif

Allstate moves to preclude Plaintiff from introducing the proposed expert testimony of Michael E. Reif. (See Doc. No. 47.) Allstate contends that Michael E. Reif should be prohibited from testifying as an expert because (1) Plaintiff failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B) and (2) Mr. Reif's opinions "are nothing more than conclusions of law and/or subjective speculation unsupported by any scientific and/or specialized knowledge" and therefore Mr. Reif's testimony is not relevant. (See Doc. No. 47 at ¶¶ 16-17, 39.) In response, Plaintiff (1) contends that Plaintiff's expert disclosures were properly and timely made with the exception of the statement of compensation which has subsequently been served on Allstate and (2) denies Allstate's claim regarding the nature and relevancy of Mr. Reif's opinions and contends that Mr. Reif's testimony is necessary to provide the jury with information regarding proper claims handling practices. (See Doc. No. 54 at ¶¶ 16-17, 39.) The Court will address these general arguments as well as Allstate's specific objections to Mr. Reif's testimony in turn.

### 1. Rule 26(a)(2)(B)

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), a party disclosing the identity of an expert witness who is retained or specially employed to provide expert testimony in the case must accompany the disclosure with a written report containing certain information, including:

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Federal Rule of Civil Procedure 37(c)(1) provides that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "A party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Tolerico v. Home Depot*, 205 F.R.D. 169, 176 (M.D. Pa. 2002). In determining whether to exclude evidence as a sanction for failure to comply with a discovery order, the Court must consider several factors, including:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). The Court is also to consider the importance of the excluded testimony. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

The Court finds that Plaintiff failed to comply with the requirements of Rule 26(a)(2)(B) because Plaintiff failed to include in her expert report information regarding publications authored by Mr. Reif in the previous 10 years, information regarding other cases in which Mr. Reif testified as an expert at trial or by deposition, and a statement of the compensation to be paid for Mr. Reif's study and testimony, as required by subsections (iv)-(vi) of Rule 26(a)(2)(B). (See Doc. No. 33-1; cf Doc. No. 54 at ¶ 39.) Nonetheless, Plaintiff has subsequently stated that Mr. Reif has not authored any publications and has not previously testified as an expert witness

8

(Doc. No. 54 at ¶ 41) and has served a statement of compensation on Allstate (see Doc. No 54 at ¶ 42). Although these disclosures should have been made in Plaintiff's expert report and at least 90 days before the date set for trial, see Fed. R. Civ. P. 26(a)(2)(B), (D), the Court finds that Plaintiff's failure to previously disclose this information is harmless. The Court is not aware of any information that suggests that Plaintiff's omissions were anything other than an honest mistake. Further, the Court finds that Allstate would not be prejudiced by the late notice of Mr. Reif's publications and previous testimony because, in light of the fact that Mr. Reif has not authored any publications and has not previously testified as an expert, the shortened time available to Allstate in which to review these materials as a result of Plaintiff's late disclosure appears to have no bearing or prejudicial effect on Allstate's preparation for trial given the circumstances of this case. Finally, the Court does not find that Plaintiff's delay in providing a statement of compensation results in prejudice or surprise to Allstate. Therefore, the Court concludes that Plaintiff's failure to comply with Rule 26(a)(2)(B) is harmless and will not grant Allstate's motion on this ground.

## 2. Nature and Relevance of Testimony

Allstate challenges the nature and relevance of Mr. Reif's testimony on several bases. Most generally, Allstate contends that the issue on which Mr. Reif will testify is neither complex nor scientific and does not require specialized skill or knowledge to discern and therefore his testimony will not assist the jury in a manner permitted by law. (Doc. No. 47 at ¶¶ 26-27.) Plaintiff denies this contention and counters that expert testimony is admissible to define reasonable claims practices. (Doc. No. 54 at ¶ 26-27.) Additionally and more specifically, Allstate contends that Mr. Reif's report heavily relies on Mr. Reif's interpretation and application of the Pennsylvania Unfair Insurance Practices Act ("UIPA"), which is inappropriate

9

expert testimony (Doc. No. 47 at ¶ 28); Mr. Reif's opinion and ultimate conclusions rely on his personal interpretations of the law, Allstate company policy, and insurance industry standards and that these matters are outside the permissible scope of expert testimony (Doc. No. 47 at ¶ 34); Mr. Reif's report contains unsupported allegations of fact and inappropriate characterizations of Allstate's claim handling and practices, including subjective interpretations of the intent of Allstate employees (Doc. No. 47 at ¶ 31; see Doc. No. 47 at ¶ 38); Mr. Reif's report interprets the applicable Allstate Policy and applies his construction of the policy to the facts of the case, in a manner not permitted by established Pennsylvania law (Doc. No. 47 at ¶ 32); and Mr. Reif's interpretation of the facts is based on inadmissible hearsay, inadvertently disclosed documents, and communications protected by the attorney-client privilege. (Doc. No. 47 at ¶¶ 35). In response to Allstate's contention that Mr. Reif's report heavily and inappropriately relies on Mr. Reif's interpretation and application of the Pennsylvania Unfair Insurance Practices Act, Plaintiff counters that Mr. Reif's report and opinion relies on his extensive experience in handling and supervising claims as well as the statutes and regulations governing claims handling. (See Doc. No. 54 at ¶ 28). Plaintiff denies Allstate's remaining contentions enumerated above. (See Doc. No. 54 at ¶¶ 27, 31, 32, 34-35) The Court will address each of Allstate's arguments in turn.

With respect to Allstate's first contention—that the issue on which Mr. Reif will testify is neither complex nor scientific and does not require specialized skill or knowledge to discern— the Court finds that Mr. Reif's testimony is "not excludable simply because he proposes to testify with respect to Plaintiff's bad faith claims." *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 421 (W.D. Pa. 2006). Although expert testimony is not required to prove an insured's bad faith claim in an action against an insurer, see, e.g., *Bergman v. United Servs.*

10

*Auto. Ass'n*, 742 A.2d 1101, 1109 (Pa. Super. 1999); *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 382, such testimony may be admitted if it is helpful to the trier of fact and is otherwise admissible. *Gallatin Fuels*, 410 F. Supp. 2d at 421; see *Bonenberger*, 791 A.2d at 382. The admission of expert testimony in bad faith insurance actions rests within the sound discretion of the trial court. *Bonenberger*, 791 A.2d. at 382 (citing *Bergman*, 742 A.2d 1101 at 1108-09).

While the Court acknowledges that some courts have permitted expert testimony in bad faith insurance actions, see, e.g., *Gallatin Fuels*, 410 F. Supp. 2d at 421; *Bonenberger*, 791 A.2d at 382, this Court agrees with the rationale of the United States District Court for the Eastern District of Pennsylvania in *Dattilo v. State Farm Insurance Co.*, No. 97-1842, 1997 U.S. Dist. LEXIS 16188 (E.D. Pa. Oct. 17, 1997), which was subsequently adopted by the Superior Court of Pennsylvania in *Bergman v. United Services Automobile Ass'n*, 742 A.2d 1101 (Pa. Super. 1999). Like the present case, both *Dattilo* and *Bergman* involved claims by insureds alleging that their insurer acted in bad faith in processing an underinsured motorist ("UIM") claim. *Dattilo*, 1997 U.S. Dist. LEXIS 16188, at *1; *Bergman*, 742 A.2d at 1107. As summarized by the Superior Court of Pennsylvania in *Bergman*, in *Dattilo* the Trial Court

> doubted both the appropriateness and the effectiveness of allowing the insureds' expert to testify because, although the expert qualified as a person experienced in claims handling and adjusting on behalf of insurers, *Dattilo* was not a malpractice case in which the insurer's conduct would be judged by the standards of the insurance industry. The *Dattilo* court reasoned that the expert witness' opinion was nothing more than subjective speculation unsupported by any scientific or specialized knowledge and rejected it. The *Datillo* court held, "bad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact." [*Dattilo*, 1997 U.S. Dist. LEXIS 16188, at *12.]

*Bergman*, 742 A.2d at 1107 (some internal citations and quotation marks omitted).

11

Here, the issues to which Mr. Reif will testify include Allstate's claim handling procedures, Allstate's company policy and philosophy, insurance industry practices and standards, the UIPA, and Allstate's compliance with each. (See Doc. No. 33-1.) These issues are neither particularly complex nor scientific. Additionally, much of the information contained in Mr. Reif's report and to which Mr. Reif is expected to testify could be placed before the jury without the aid of expert testimony. For example, Plaintiff may introduce evidence regarding Allstate's company policy, Allstate's claims handling procedures, and Plaintiff's argument that Allstate failed to train and instruct its employees without the testimony of Mr. Reif. Similarly, the Court finds the average juror is capable of analyzing and drawing conclusions about much of the information analyzed by and many of the conclusions drawn by Mr. Reif, and that the presentation of Mr. Reif's conclusions to the jury would risk usurping the role of the juror as factfinder. For example, the Court finds that the factfinder possesses the requisite knowledge to assess Allstate's compliance with its company policy. Additionally as explained *infra*, the Court finds that an overwhelming majority of the information and opinions contained in Mr. Reif's report are outside the permissible scope of expert testimony. Thus, although Plaintiff correctly alleges that expert testimony may be admissible in bad faith cases (see Doc. No. 54 at ¶¶ 15, 18, 20-21), upon consideration of Mr. Reif's proposed testimony, the nature of a bad faith claim as a legal concept of general application, and the particular issues involved in the instant case, the Court **GRANTS** Allstate's motion *in limine* (Doc. No. 47). For the sake of completeness, the Court will address Allstate's remaining contentions and explain why the overwhelming majority of the information and opinions contained in Mr. Reif's report are outside the permissible scope of expert testimony.

With respect to Allstate's second contention—that Mr. Reif's report heavily and inappropriately relies on Mr. Reif's interpretation and application of the UIPA—the Court agrees that Mr. Reif's interpretation and application of the UIPA is inappropriate expert testimony. To show bad faith under 42 Pa. Cons. Stat. § 8371, an insured must prove by clear and convincing evidence that "the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); see also *W.V. Realty Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003). As previously explained in this Court's Memorandum and Order on Allstate's Motion for Summary Judgment (Doc. No. 50) the Third Circuit and District Courts in the Third Circuit depart from the Superior Court of Pennsylvania's view that it is appropriate to consider the UIPA and the Unfair Claims Settlement Practices Act ("UCSP") when evaluating an insurer's bad faith pursuant to 42 Pa. Cons. Stat. § 8371 (see Doc. No. 50 n.4). A District Court has discretion to exclude expert testimony that a defendant-insurer's conduct violated the UIPA and the UCSP when such testimony is of limited relevance and presents the potential for substantial, unfair prejudice to the defendant-insurer. See *Dinner v. United Servs. Auto Ass'n Cas. Ins. Co.*, 29 Fed. Appx. 823, 825, 827-28 (3d Cir. 2002).

Here, Mr. Reif intends to testify that Allstate violated four statutory provisions of the UIPA and one statutory provision of the UCSP. (See Doc. No. 33-1.) Three of the alleged violations concern the timing of Allstate's handling of the claim. (See Doc. No. 33-1 at 14.) The remaining two violations relate to Allstate's disclosure of policy provisions and the manner in which Plaintiff's UIM claim was ultimately resolved. (See Doc. No. 33-1 at 14.) These alleged violations have little relevance to the question of whether the insurer had a reasonable basis for

13

denying benefits under the policy and knew or recklessly disregarded its lack of reasonable basis in denying the claim. See *Dinner*, 29 Fed. Appx. at 825-828 (finding that defendant's alleged violation of provisions of the UIPA and UCSP were not relevant to issue of "bad faith" under the *Terletsky* standard when alleged violations related to the timing of investigations, payment of claims, and insurer's business practices; finding no abuse of discretion where District Court held that expert testimony regarding said alleged violations of the UIPA or UCSP was unnecessary and potentially prejudicial). Furthermore, the Court finds that the probative value of Mr. Reif's proposed testimony regarding Allstate's alleged violations of the UIPA and UCSP would be substantially outweighed by a danger of unfair prejudice and confusing the issues. See Fed. R. Evid. 403. Therefore, Plaintiff's expert may not testify to Allstate's alleged violations of the UIPA and UCSP.

Allstate's third main argument for precluding the proposed testimony of Mr. Reif is that Mr. Reif's opinion and ultimate conclusions rely on his personal interpretations of the law, Allstate company policy, and insurance industry standards, and that these matters are outside the permissible scope of expert testimony.[2] The Court has addressed *supra* the permissibility of Mr. Reif's testimony on Allstate company policy and insurance industry standards. For the reasons stated above, Mr. Reif may not testify to insurance industry standards, Allstate company policy or Allstate's compliance therewith. The Court agrees with Allstate that Mr. Reif's report contains legal conclusions. For example, in his report, Mr. Reif concludes that Allstate and its employees acted in bad faith in handling Plaintiff's UIM claim. (See Doc. No. 33-1 at 15.) It is well-settled that expert opinion on the ultimate legal issue of whether a defendant acted in bad

---

[2] Pursuant to Federal Rule of Evidence 703, facts or data on which an expert bases an opinion need not be admissible for the opinion to be admitted "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject . . . ." Although slightly ambiguous, the Court interprets Allstate's argument to contest Mr. Reif's proposed opinion testimony on the law, Allstate company policy, and insurance industry standards and not Mr. Reif's reliance on these matters in forming his opinion.

faith is inadmissible. See, e.g., *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D. NJ 2008); *Connolly v. ReliaStar Life Ins. Co.*, No. 03-5444, 2006 U.S. Dist. LEXIS 83440, at *47 n.2 (E.D. Pa. Nov. 13, 2006). Therefore, Plaintiff's expert also may not testify to the portion of his report that consists of legal conclusions or opines on the ultimate legal issue of whether Allstate acted in bad faith.

Relatedly, the Court also agrees with Allstate's fourth contention—that Mr. Reif's report contains unsupported allegations of fact and inappropriate characterizations of Allstate's claim handling and practices, including subjective interpretations of the intent of Allstate employees. Mr. Reif's report contains numerous statements regarding what Allstate's adjusters were trying to do, were willing to do, knew, and recognized. (See Doc. No. 33-1 at 12-13.) "An expert simply is not in any better position than the jury to assess another's subjective intent." *Gallatin Fuels*, 410 F. Supp. 2d at 423. Therefore, to the extent that Mr. Reif's proposed testimony relates to the significant portions of his report that contain unsupported allegations, characterize Allstate's claims handling and practices in a manner not supported by the evidence, and comment on the subjective intent of the claim handlers, this testimony is inappropriate and will not be permitted.

The Court also agrees with Allstate's fifth contention. Specifically, the Court finds that Mr. Reif's report interprets the applicable Allstate policy and applies his construction of the policy to the facts of this case. For example, in his report Dr. Reif interprets what is required to breach the limited tort threshold pursuant Plaintiff's insurance contract and concludes that Allstate's adjuster supplied the wrong standard to those who later used that standard. (See, e.g., Doc. No. 33-1 at 10-11.) Mr. Reif's opinions on contract construction, and hence Plaintiff's coverage under the policy, although derivative of Mr. Reif's experience in the insurance

15

industry, are not based upon reliable scientific methodology as required under the Federal Rules of Evidence. See Fed. R. Evid. 702. Rather, these opinions are based upon Mr. Reif's interpretation of insurance law and the application of this law to the instant case and therefore are impermissible legal conclusions. See *McCrink v. Peoples Benefit Life Ins. Co.*, No. 2:04-cv-01068-LDD, 2005 U.S. Dist. LEXIS 5072, at \*10-12 (E.D. Pa. Mar. 29, 2005) (declining to consider expert's construction of insurance policy because opinion on construction and coverage is not based upon reliable scientific methodology but expert's subjective interpretation of insurance case law); *Gallatin Fuels*, 410 F. Supp. 2d at 42. Therefore, Mr. Reif may not testify to his construction of the insurance policy and his application of this construction to Plaintiff's claims.

With respect to Allstate's last contention—that Mr. Reif's interpretation of the facts is based on inadmissible hearsay, inadvertently disclosed documents, and communications protected by the attorney-client privilege—the Court agrees that much of Mr. Reif's report is based on and informed by information contained in the inadvertently disclosed subject documents, discussed *supra*, which remain privileged. Although an expert's use of inadmissible facts or data in forming an opinion is not problematic *per se*, see Fed. R. Evid. 703; *supra* note 3, to the extent that Mr. Reif's testimony incorporates, relies on, or is informed by, this testimony is inappropriate and will not be permitted.

Given the extensive portions of Mr. Reif's proposed testimony that are inappropriate subjects of expert testimony and this Court's conclusion that this case does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact, the Court will **GRANT** Allstate's motion *in limine* (Doc. No. 47).

**C.     Allstate's Motion *in Limine* to Preclude Plaintiff from Offering Evidence of Alleged Punitive Damages/Allstate's Net Worth**

Allstate moves to preclude Plaintiff from offering evidence of alleged punitive damages and Allstate's net worth, at least until Plaintiff first presents clear and convincing evidence that Allstate did not have a reasonable basis for denying benefits under the policy and Allstate knew or recklessly disregarded this lack of a reasonable basis for refusing payment and of outrageous conduct. (See Doc. No. 45 at ¶¶ 19-22.) Allstate contends that allowing Plaintiff to present Allstate's net worth without first presenting legally sufficient evidence to sustain her claim for punitive damages would be severely and unfairly prejudicial to Allstate, confuse the issues, mislead the jury, unduly delay the conclusion of the trial, waste time, and result in the presentation of irrelevant evidence. (See Doc. No. 45 at ¶¶ 20-22.) Plaintiff disagrees that presentation of this evidence would have such undesirable effects and argues that she "presented sufficient evidence in discovery, and will present sufficient evidence at trial to, to make a jury question of whether Allstate acted in bad faith." (See Doc. No. 52 at ¶¶ 20-22.)

In discussing what constitutes legally sufficient evidence to sustain Plaintiff's claim for punitive damages, Allstate cites the Restatement (Second) of Torts section 908(2) for the proposition that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2). (See Doc. No. 45 at ¶ 17.) While Allstate is correct that Pennsylvania has adopted section 908 of the Restatement (Second) of Torts, which provides that punitive damages may be awarded to punish a defendant for outrageous conduct, see *W.V. Realty Inc.*, 334 F.3d at 318, the standard for punitive damages in the instant case is informed by the fact that the statute under which Plaintiff seeks relief provides for an award of punitive damages upon a finding of bad faith, see 42 Pa. Cons. Stat. § 8371. That statute states:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

> (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. In a section 8371 bad faith case, both intent and reckless behavior can support a finding of bad faith and support an award of punitive damages. See *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 235 (3d Cir. 1997); *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994); *Thomas v. State Farm Ins. Co.*, No. 99-cv-2268, 1999 U.S. Dist. LEXIS 17384, at *9 (E.D. Pa. Nov. 5, 1999). There is some uncertainty as to whether a finding of bad faith alone pursuant to section 8371 is sufficient to support an award of punitive damages. In at least two cases, the Superior Court of Pennsylvania has held that "a finding of bad faith permits an award of punitive damages 'without additional proof, subject to the trial court's exercise of discretion.'" *Zimmerman v. Harleysville Mut. Ins. Co.*, 860 A.2d 167 (Pa. Super. 2004) (quoting *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 419 (Pa. Super. 2004); see also *Jurinko v. Med. Protective Co.*, 305 Fed. Appx. 13, 25 n.13 (3d Cir. 2008). However, although the Third Circuit has stated that while a finding of bad faith may, by itself, be sufficient to award punitive damages, it has not found that a finding of bad faith is always sufficient to award punitive damages. See *Jurinko*, 305 Fed. Appx. at 25, 25 n.13 (citing *Polselli*, 23 F.3d at 751). Recently however, the Third Circuit, acknowledging this caselaw, stated that "section 8371 appears to allow an award of punitive damages based on a finding of bad faith." *Id.* at 25 n.13. Nonetheless, the court found that, under the facts of the case before it, it need not predict how the

18

Supreme Court of Pennsylvania would rule on the issue. *Id.* In light of the precedent of the Superior Court of Pennsylvania and the suggestion of the Third Circuit in *Jurinko*, this Court predicts that the Supreme Court of Pennsylvania would interpret section 8371 to permit an award of punitive damages upon a finding of bad faith alone.

Nonetheless, the Court agrees with Allstate that, should Plaintiff present evidence regarding Allstate's net worth and punitive damages before Plaintiff presents legally sufficient evidence to sustain her claim for punitive damages, the probative value of this evidence would be substantially outweighed by a danger of unfair prejudice to Allstate, confusing the issues, misleading the jury, undue delay, and wasting time. See Fed. R. Evid. 403. Nonetheless, contrary to Allstate's contention, the Court finds that Plaintiff need not present evidence of outrageousness pursuant section 908 of the Restatement (Second) of Torts in order to provide legally sufficient evidence to sustain her claim for punitive damages. Rather, Plaintiff need only present legally sufficient evidence to sustain her claim of bad faith for evidence regarding Allstate's net worth and punitive damages to be relevant to the jury and for its probative value to render its admission proper pursuant to Federal Rule of Evidence 403. Therefore, at any time during her case in chief, Plaintiff is free to request a ruling on whether Plaintiff has introduced sufficient evidence of bad faith to put evidence of punitive damages and Allstate's net worth before the jury. The Court will then conduct a hearing outside the presence of the jury. If the Court finds sufficient evidence to sustain Plaintiff's bad faith claim, Plaintiff will be permitted to introduce evidence relating to punitive damages and Allstate's net worth. Similarly, Defense counsel is free to move for judgment as a matter of law under Fed. R. Civ. Pro. 50(a) prior to Plaintiff's introduction of any evidence pertaining to punitive damages or Allstate's net worth, provided that Plaintiff has been permitted to introduce all admissible evidence on the issue of

bad faith prior to Allstate's Rule 50(a) motion. Accordingly, the Court will **GRANT in part** and **DENY in part** Allstate's motion *in limine* (Doc. No. 45).

### D. Allstate's Motion *in Limine* to Preclude Plaintiff from arguing that Dr. Perry is a "Hired Gun" or "One-Man IME Mill"

Allstate moves to preclude Plaintiff from arguing that Dr. Perry is a "hired gun" or a "one-man IME mill." (See Doc. No. 46.) Allstate contends that Plaintiff is attempting to improperly inject bias into the instant case without factual or evidentiary support and that Plaintiff relies largely upon inadmissible documents protected by the attorney-client privilege. (See Doc. No. 46 at ¶¶ 22-24, 33-34.) Allstate further contends that bias is not relevant in this case. (See Doc. No. 46 at ¶ 26.) Plaintiff denies these allegations and sets forth evidence which Plaintiff contends supports the conclusion that Dr. Perry was biased and Allstate knew of this bias. (See Doc. No. 53 at ¶¶ 22-24, 26, 33-34.)

Contrary to Allstate's contention, bias of and bias in selecting an independent medical examiner is relevant to bad faith pursuant to 42 Pa. Cons. Stat. § 8371. See Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *Suscavage v. Nationwide Mut. Ins. Co.*, No. 3:05cv501, 2008 U.S. Dist. LEXIS 43793, at *6-9 (M.D. Pa. June 3, 2008) (finding evidence that defendant-insurer sought out a doctor who was of the school of thought that fibromyalgia cannot be caused by trauma indicated defendant was attempting to minimize the value of plaintiff's claim through its investigative process and was relevant to Plaintiff's bad faith claim pursuant to 42 Pa. Cons. Stat. § 8371; also finding evidence that IME physician utilized by defendant-insurer was acquaintance of defense counsel for defendant-insurer relevant to Plaintiff's bad faith claim); *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 179, 183 n.18 (E.D. Pa. 2004) (finding that an insurance company's exhibition of

20

bias by selecting a biased independent medical examiner is relevant to Plaintiff's bad faith claim, although ultimately disallowing discovery on alleged practice because evidence of the alleged bad faith practice was not applied to Plaintiff in the instant case); *Greco v. Paul Revere*, No. 97-6317, 1999 U.S. Dist. Lexis 110, at *15 (E.D. Pa. Jan. 12, 1999). Allstate's reliance on *McCabe v. State Farm Mutual Automobile Insurance Co.*, 36 F. Supp. 2d 666, 671 (E.D. Pa. 1999), to support the argument that bias is not relevant in this case is misplaced. *McCabe* only stands for the proposition that, as a matter of law, an insurance company's reliance upon an examination of an independent medical examiner is not in and of itself bad faith. See *id.* Upon consideration of the broad definition of "relevant" evidence found in the Federal Rules of Evidence and the fact specific nature of a bad faith claim, the Court finds that, to the extent that Plaintiff can provide admissible evidence that Allstate exercised bias in selecting Dr. Perry to conduct the independent medical exam or that Dr. Perry was biased, such information has a tendency to make Plaintiff's allegation of bad faith more probable than it would be without the evidence and may be useful to the jury in determining whether Allstate acted in bad faith, and therefore is relevant.

Nonetheless, the Court finds that the terms "hired gun" and "one-man IME mill" are highly prejudicial and that their probative value is substantially outweighed by a danger of unfair prejudice. See Fed. R. Evid. 403. Accordingly, the Court will **GRANT in part** and **DENY in part** Allstate's motion *in limine* (Doc. No. 46). Allstate's motion is **DENIED to the extent that** it seeks to preclude Plaintiff from arguing that Dr. Perry was biased or that Allstate exercised bias in selecting an independent medical examiner but is **GRANTED to the extent that** it seeks to preclude Plaintiff from using the terms "hired gun" or "one man-IME mill."

## VI. CONCLUSION

For the above-stated reasons, the Court will **GRANT** Doc. Nos. 47 and 48 and **GRANT**

**in part** and **DENY in part** Doc. Nos. 45 and 46. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SUSAN P. SMITH,                           )
                                          )
                Plaintiff,                )
                                          )
        v.                                )    CIVIL ACTION NO. 3:11-CV-165
                                          )    JUDGE KIM R. GIBSON
ALLSTATE INSURANCE COMPANY,               )
                                          )
                Defendant.                )

## ORDER

**AND NOW**, this 8th day of November 2012, upon consideration of four motions *in limine* filed by Defendant Allstate Insurance Company and Plaintiff Susan P. Smith's opposition thereto, and in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED** that Doc. Nos. 47 and 48 are **GRANTED** and Doc. Nos. 45 and 46 are **GRANTED in part** and **DENIED in part**.

BY THE COURT:

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**